NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-429

S.G.

vs.

W.S.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, W.S., appeals from an order extending a G. L. c. 258E harassment prevention order issued against him following a full hearing.  He challenges the extension of that order and further argues that the hearing judge erred in denying his motion to dismiss the c. 258E order based on forum non conveniens and his motion in limine seeking to preclude the admission of evidence of his conduct prior to June 2, 2023.  We affirm.

On August 9, 2023, at the request of the plaintiff, S.G., a temporary c. 258E order was issued against W.S. following an ex parte hearing.  In her affidavit supporting her application for the order, S.G. alleged that since the couple moved from

Massachusetts to New York in 2019, W.S. began to subject her to verbal and sexual abuse and engaged in "coercive control."[1] This coercive control included W.S. electronically surveilling S.G. by logging into her Google account to monitor her location. W.S. would also frequently verbally abuse S.G. by screaming at her "inches from [her] face" in the presence of their child.[2]

In May of 2023, S.G. alleged that when the couple was staying in their New York apartment, W.S. "incessantly yelled at me and berated me" in front of the child for multiple days straight, and that she and the child "were in a constant state of anxiety of fear." During this time, W.S. would "grab" the child to prevent S.G. from leaving the apartment with him. Finally, on May 24, 2023, S.G. and the child fled New York and returned to Massachusetts. S.G. then sought and obtained a temporary G. L. c. 209A order against W.S. from the Probate and Family Court. The day before the full hearing on the c. 209A order, S.G. received a notification that W.S. had added firearm accessories to their joint Amazon account shopping cart, including a laser sight for a handgun he owned. S.G. alleged that W.S. knew that she received notifications from the account

_____

[1] S.G. and W.S. were married in 2021.

[2] S.G. stated in her affidavit that this abuse had a significant impact on the child, who became uncomfortable around other children at school and ultimately refused to attend kindergarten.

2

and believed that W.S. was intentionally threatening her on the eve of the c. 209A hearing. On June 2, 2023, S.G.'s request for an extension of the c. 209A order was denied following full hearing. However, the probate court judge did enter an order by agreement between S.G. and W.S. (June order) that granted S.G. occupancy of their home in Massachusetts while W.S. would have occupancy of their New York apartment. The order also allowed S.G. to travel with the child to Mexico for one month in the summer.

Before S.G.'s departure to Mexico, W.S. repeatedly messaged her telling her that she was not permitted to take the child to Mexico. During a phone call, W.S. threatened to report her travel with the child to Mexico as kidnapping and said he would get law enforcement to prevent them from leaving the country. This call was followed by "11 text messages with personal attacks and verbal harassment." When S.G. and the child arrived in Mexico, W.S. threatened to report to Mexican police that S.G. had abducted the child. W.S. stated that he would stop threatening to call the Mexican authorities if S.G. allowed him to travel to Michigan with the child.

S.G. alleged that while she and the child were in Mexico, W.S. broke into her Massachusetts law office using keys he had stolen, rummaged through personal and legal documents, and removed a computer and multiple car keys from the office. W.S.

3

also entered the Massachusetts home, purportedly to pick up some summer clothes, in violation of the June order and while the home was occupied by tenants. S.G. further stated in her affidavit that W.S. stole approximately $25,000 of her personal belongings from their apartment in New York.

On November 7, 2023, following two agreed-upon continuances, a District Court judge conducted a hearing on S.G.'s request to extend the c. 258E order. Both parties appeared and were represented by counsel. At the start of the hearing, the judge denied both W.S.'s motion to dismiss for forum non conveniens and his motion in limine seeking to preclude testimony of events occurring prior to June 2, 2024. The c. 258 hearing then continued, and S.G. testified to the incidents addressed in her affidavit and her counsel introduced a series of exhibits, including mailed letters, text messages, and other digital communications from W.S. S.G. also testified that while the temporary c. 258E order was in effect, W.S. mailed three postcards addressed to the child to her law office. W.S. also mailed a large envelope to S.G. containing a book titled, "Don't Hurt Me, Mama," and a letter written by W.S. that focused on calling S.G. a bad mother who hurts her son. S.G. also testified that during this time, W.S. constantly sent her "abusive and intimidating" messages through their "OurFamilyWizard" account, which, by court order, was to be used

4

exclusively to communicate about parenting the child.  At the conclusion of the hearing, the judge found there was ample evidence to support the issuance of the c. 258E order and extended the order for one year.[3]

Discussion.  To begin, W.S. asserts that his motion to dismiss for forum non conveniens was improperly denied because the Probate and Family Court, where the parties divorce case is pending, "is more suited to handle this matter."  General Laws c. 258E, § 2, provides that "[p]roceedings under [the statute] shall be filed, heard and determined in the superior court department or the respective divisions of the district court department . . . having venue over the plaintiff's residence."  The Probate and Family Court does not have jurisdiction over such proceedings.  To prevail on forum non conveniens grounds, a defendant must show both the existence of an alternative forum and "that 'the balance of private and public concerns strongly favor' that alternative forum."  M.K. v. D.B., 102 Mass. App. Ct. 183, 188 (2023), quoting Gianocostas v. Interface Group-Mass., Inc., 450 Mass. 715, 723 (2008).  Here, W.S. demonstrated neither the existence of an alternative forum nor that the alternative forum had better access to the parties or witnesses.

_____

[3] W.S. elected to assert his privilege under the Fifth Amendment to the United States Constitution and did not testify at the extension hearing.

5

Accordingly, the hearing judge did not abuse his discretion in denying W.S.'s motion to dismiss based upon forum non conveniens. See Gianocostas, supra (decisions to grant or deny motions to dismiss on ground of forum non conveniens reviewed for abuse of discretion).

W.S. also argues that the judge erred in denying his motion in limine which sought to preclude any evidence relating to W.S.'s conduct prior to June 2, 2023, alleging that such conduct was already litigated in during the c. 209A order hearing in the Probate and Family Court and therefore subject to collateral estoppel. However, because orders under G. L. c. 209A and G. L. c. 258E rest on different showings, conduct that may be insufficient to support a c. 209A order may very well be sufficient to support an order under c. 258E. Compare Yasmin Y. v. Queshon Q., 101 Mass. App. Ct. 252, 256 (2022), with Yahna Y. v. Sylvester S., 97 Mass. App. Ct. 184, 186 (2020). Therefore, we disagree with W.S. that collateral estoppel applies, and we also discern no abuse of discretion in the judge's denial of the motion in limine. See Wilhelmina W. v. Uri U., 102 Mass. App. Ct. 634, 639 n.11 (2023). Furthermore, collateral estoppel would not apply to the extent S.G. introduced material new evidence of harassment at the extension hearing, which she did in this case. See G.B. v. C.A., 94 Mass. App. Ct. 389, 397-398 (2018).

6

Finally, turning to the merits, W.S. contends that S.G. failed to prove a prima facie case of harassment under G. L. c. 258E, § 3, because she did not prove by a preponderance of the evidence that W.S. committed three or more acts of harassment as defined by G. L. c. 258E, § 1. We disagree.

We review a judge's decision whether to extend a c. 258E order for an abuse of discretion or other error of law. See Yasmin Y., 101 Mass. App. Ct. at 256. The standard for extending a c. 258E order is whether the plaintiff has demonstrated, by a preponderance of the evidence, that an extension is reasonably necessary to protect the plaintiff from further harassment. See G. L. c. 258E, § 3. The justification for extending the order varies depending upon the basis on which the order was granted. See Yasmin Y., supra at 256-257. However, "[m]ost harassment prevention orders are granted based on [three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property" (quotation and citation omitted). Id. at 256. See G. L. c. 258E, § 3.

Here, the judge credited S.G.'s testimony and found that W.S.'s alleged acts of harassment were "corroborated by

documentation, including but not limited to text messages."[4]

Indeed, contrary to W.S.'s argument, S.G. testified to a good deal more than three acts of harassment within the meaning of G. L. c. 258E, § 1. Therefore, we also discern no abuse of discretion in the judge's extension of the c. 258E order.

<u>Order entered November 7, 2023, extending harassment prevention order affirmed</u>.

By the Court (Desmond, Ditkoff & Englander, JJ.[5]),

*Paul Little*

Clerk

Entered:  May 6, 2025.

---

[4] "We accord the credibility determinations of the judge who heard the testimony of the parties . . . the utmost deference" and find no reason not to do so here (citation omitted). <u>E.C.O.</u> v. <u>Compton</u>, 464 Mass. 558, 562 (2013).

[5] The panelists are listed in order of seniority.